**DAVID J. HOLDSWORTH** (4052)
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| TATIANA E. COLATA, | : | **VERIFIED COMPLAINT** |
|---|---|---|
|  | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| NORTHGATE HOTEL II LLC, | : | Civil No. |
|  | : |  |
| Defendant. | : | Hon. |

COMES NOW the Plaintiff, Tatiana E. Colata, by and through her counsel, David J. Holdsworth, complains of Northgate Hotel II, LLC, demands trial by jury, and, as and for causes of action, alleges as follows:

### I.  PARTIES

1. Plaintiff Tatiana E. Colata (hereinafter "Plaintiff") is a resident of the State of Utah.

2. The entity Plaintiff names as Defendant herein is Northgate Hotel II, LLC.  On information and belief, Plaintiff alleges that, at all times relevant hereto,

Northgate Hotel II, LLC (hereinafter "Defendant"), was a business entity which did business in the State of Utah, and employed 15 or more employees, including Plaintiff.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the instant case pursuant to federal question — namely, the interpretation and application of Title VII of the Civil Rights Act of 1964, as amended, which provides that it is unlawful to discriminate against an employee in her employment on the basis of her gender, and pregnancy-related conditions, and to retaliate against an employee for engaging in protected activity.

4. Venue in this Court is proper in that the employment practices alleged herein to be violative of Title VII were committed within the jurisdiction of the State of Utah.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about February 5, 2021, Plaintiff filed a Charge of Discrimination with the UALD in which she alleged that Defendant had discriminated against her based on her sex and pregnancy.

6. Plaintiff filed her Charge of Discrimination within 180 days from the last date of the alleged harm. The Court is able to exercise jurisdiction over non-discrete discriminatory actions which constitute a continuing violation occurring earlier

than August 9, 2020 and discrete discriminatory actions occurring on or after August 9, 2020, a date which is 180 days before Plaintiff filed her Charge of Discrimination. The Court may treat all alleged discrete discriminatory actions occurring before this date as being untimely for purposes of relief, but may give weight to evidence of such for evidentiary purposes.

7. On August 15, 2023, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Notice of Right to Sue.

8. Thus, all jurisdictional requirements have been met as required by Title VII of the Civil Rights Act of 1964, as amended.

## II. TYPES OF DISCRIMINATION ALLEGED

9. Plaintiff, by and through her counsel, David J. Holdsworth, is alleging Defendant engaged in actions and practices which violated Title VII of the Civil Rights Act of 1964, as amended, which provides that it is unlawful to: discriminate against an employee in her employment on the basis of her sex and pregnancy, and to retaliate against an employee for engaging in protected activity.

## STATEMENT OF FACTS

10. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 9 above as if alleged in full herein.

11. Plaintiff is a female.

3

12. On April 16, 2018, Defendant initially hired Plaintiff to work for Defendant as a front desk agent on a part-time basis. On March 19, 2020, due to the COVID-19 pandemic, Defendant terminated Plaintiff as part of a company-wide layoff. On or about September 24, 2020, Defendant rehired Plaintiff as a front desk agent to work on a part-time basis.

13. During her employment with Defendant, Plaintiff interfaced with several managers and supervisors, including Taylor Massey ("Massey"), Assistant General Manager (and her immediate supervisor), Laura Gleave ("Gleave"), General Manager, and Mike Webster ("Webster"), Vice President of Operations.

14. Plaintiff alleges that, on December 16, 2020, Plaintiff texted Massey, informing him that she had found out that she was pregnant and that she was experiencing severe morning sickness. Plaintiff texted Massey that, due to her morning sickness, she would be unable to work her scheduled shift on December 17, 2020. Plaintiff explained that, with her morning sickness, she would probably not be able to work a full shift for eight hours without having a trash can nearby or constantly running to a restroom. Plaintiff also texted Massey that she had had complications with prior pregnancies and that she was high risk. Plaintiff also stated, "[…] I was going to maybe just stop working [temporarily] because it's going to be like this for the

next two months…" Plaintiff alleges that this text was a request for accommodations for the first trimester of her pregnancy, not a quit or a resignation.

        15. Massey responded to Plaintiff's request, informing her that he would find coverage for Plaintiff's next shift on December 17, 2020. Massey also asked, "is there any way you can give me until the end of the year? That's only five more shifts." Plaintiff replied that, because of her condition (high risk pregnancy, causing severe morning sickness), she would try to work, but could not commit to be able to work a full shift. Plaintiff alleges that this was also a request for an accommodation for her pregnancy.

        16. On information and belief, Plaintiff alleges that Massey then spoke with Gleave and showed Gleave the text he had received from Plaintiff.

        17. Plaintiff alleges that on December 17, 2020, Massey texted Plaintiff back that he had spoken with Gleave, and because Plaintiff had stated she could not work a full shift, they had decided to take her off of the schedule, in essence, terminating her employment. Massey told Plaintiff that "they" appreciated her hard work, informed her that her final check would be available the following day, December 18, 2020, and asked her to bring in her uniform when she had the opportunity to do so.

18. Plaintiff alleges that later that same day, she texted Gleave, told Gleave that, although she was pregnant, she loved her job and had worked hard in her position and had no desire to leave her job. Plaintiff reiterated to Gleave that the reason she couldn't commit to working a full shift was because of her morning sickness being as severe as it was. Plaintiff suggested she could work fewer hours/shorter shifts because of her morning sickness. Plaintiff suggested to Gleave that she could be placed as an on-call employee because she had worked with employees who worked on-call. Plaintiff alleges her manager was unwilling to work with her disability and never responded to her suggestions. Plaintiff also alleges she texted Gleave, stating "being let go because of my pregnancy sickness you know is discrimination." Plaintiff also said, "After all these years, I thought there would be something we can work out but you couldn't even call or text to warn me or let me know my options. I've been in contact with [the] labor commission[,] just wanted to pre-warn you."

19. Later the same day, Gleave responded to Plaintiff, explaining that, based on the text Plaintiff had sent to Massey, "they" believed Plaintiff was unable to work her scheduled shifts and was not able to work for the next two months. Gleave stated, "I took that as your notice of leaving the position. If that is incorrect, please call me or come into the office so we can clear that up."

20. Plaintiff alleges that on December 18, 2020, she responded to Gleave's text, stating (texting), "[…] It's not that I won't work my shifts, it's that I literally can't because of my pregnancy.  I never told [Massey] 'I quit' but if that's a decision that was made on what I said and not why I said it then that's your call".  Plaintiff alleges that, in her text back to Gleave, she explained that she had suggested she could be placed in an on-call position until she felt better, which would take approximately two months.  Plaintiff alleges she said, "[…] That's just my suggestion on how this could have gone but not my call."  Plaintiff alleges that this was also a request for an accommodation.

21. Plaintiff alleges that Defendant did not respond to her requests for accommodation, did not change its position and affirmed its decision to terminate her employment.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DEFENDANT FAILED TO ACCOMMODATE
### PLAINTIFF RELATED TO HER PREGNANCY

22. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 21 above as if alleged in full herein.

23. To state a prima facie case of failure to accommodate related to a pregnancy, Plaintiff alleges facts which establish, or tend to establish, that: (1) she was

pregnant during the timeframe in question; (2) she was "otherwise qualified" to do the job she held; (3) she requested a "plausibly reasonable accommodation"; and (4) Defendant refused, declined or failed to accommodate her pregnancy.  *See* Utah Code § 34A-5-106 (1) (g) (i); *see also Aubrey v. Koppes,* 975 F.3d 995, 1005 (10th Cir. 2020).

24. Plaintiff alleges there is no dispute that, during the relevant time period, Plaintiff was pregnant and that she was otherwise qualified for her position she held in that, with an accommodation, she could have continued to perform the essential functions of her job.

25. As such, Plaintiff's allegations satisfy the first two elements of a prima facie case of denial of accommodation related to pregnancy.

26. Plaintiff alleges that she requested reasonable accommodations and initiated a reasonable accommodation dialogue with Defendant so as to discuss the feasibility of various reasonable accommodations.

27. Plaintiff alleges that she requested an accommodation on the following occasions: (1) when she informed Massey she was having severe morning sickness and needed to be excused from work on December 17, 2020; (2) when she informed Massey that, because of her pregnancy, she could not work a full shift for a while; and (3) when she told Gleave she thought she could work shorter shifts/fewer

shifts because of her pregnancy; or (4) when she told Gleave she could work as an on-call agent.

28. Plaintiff alleges that each of the suggestions was a request for accommodation.

29. Plaintiff's allegations satisfy the third element of the prima facie case.

30. The interactive accommodation process must ordinarily begin with the employee providing notice to the manager of the employee's disability and any resulting limitations. *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1171 (10th Cir. 1999). "[T]he term 'reasonable accommodation' refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Aubrey v. Koppes,* 975 F.3d 995, 1005 (10th Cir. 2020).

31. After an employee makes an accommodation request, both parties have an obligation to proceed in a reasonably interactive manner and to engage in good-faith communications to identify a reasonable accommodation. *Yinger v. Postal Presort, Inc.,* 693 F.Appx. 768, 773 (10th Cir. 2017) (*citing Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1171 (10th Cir. 1999). "A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by

way of initiation or response, may also be acting in bad faith." *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1171 (10th Cir. 1999).

33. Plaintiff alleges that, although Defendant may have interpreted Plaintiff's statements on December 16, 2020 to constitute a voluntary resignation, once Plaintiff clarified she was not resigning, Defendant had an obligation to engage in a meaningful effort to discuss possible accommodations with Plaintiff, and failed to do so. When Plaintiff suggested at least four possible accommodations, Defendant failed to engage in good-faith communications to determine if any reasonable accommodation was possible.

33. Plaintiff's allegations satisfy the fourth element of a prima facie case of failure to accommodate.

34. Plaintiff alleges that, by failing to provide a reasonable accommodation, Defendant violated the ADA.

35. Plaintiff's allegations state a claim of failure to accommodate an employee on the basis of pregnancy.

### SECOND CAUSE OF ACTION
### DEFENDANT DISCRIMINATED AGAINST
### PLAINTIFF BASED ON SEX AND PREGNANCY

36. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 35 above as if alleged in full herein.

10

37. To state a prima facie case of discrimination based on sex and pregnancy, Plaintiff alleges facts which establish, or tend to establish, that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) Defendant subjected her to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination on the basis of sex and pregnancy. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

38. Plaintiff alleges that, during the relevant time period, there is no dispute that Plaintiff was pregnant and that she was otherwise qualified for her position she held.

39. As such, Plaintiff's allegations satisfy the first two elements of a prima facie case of discrimination based on sex and pregnancy.

40. Plaintiff alleges that Defendant subjected her to an adverse action. An adverse employment action includes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment was significantly different responsibilities, or a decision causing a significant change in benefits". *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007).

41. Here, Plaintiff alleges that Defendant subjected her to adverse action (1) when it assumed Plaintiff was resigning, even though Plaintiff clarified she

was not resigning; and (2) when it terminated Plaintiff's employment; and (3) when it reaffirmed its decision to terminate Plaintiff's employment.

42. As such, Plaintiff's allegations satisfy the third element of a charge of discrimination based on sex and pregnancy.

43. Plaintiff alleges that the circumstances surrounding the adverse actions give rise to an inference of discrimination on the basis of sex and pregnancy. Potential circumstances that give rise to an inference of discrimination include: (1) disparate treatment, which, but for the employee's protected trait, would be different, *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991); and (2) evidence that the protected trait actually motivated the employer's decision. *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971).

44. Plaintiff alleges she communicated to Defendant that she was pregnant, that she was experiencing severe morning sickness, and, as a result, she was not going to be able to work her shift the next day or any full shifts for at least the next few weeks. Plaintiff alleges that, despite this information, Defendant interpreted Plaintiff's explanation of her morning sickness and how it affected her ability to work as a resignation and that, even when Plaintiff explained that she had not resigned and not intended to communicate that she was resigning, but to keep working in some alternative capacity until she got over the severe stage of her morning sickness,

Defendant didn't change its position, but reaffirmed its decision to terminate her employment.

45. Plaintiff's allegations support an inference that her sex and pregnancy actually motivated Defendant's decision to terminate her employment.

46. As such, Plaintiff's allegations satisfy the fourth element of a prima facie case of discrimination based on sex and pregnancy.

47. Plaintiff's allegations state a claim of discrimination based on sex and pregnancy.

## THIRD CAUSE OF ACTION
## DEFENDANT RETALIATED AGAINST PLAINTIFF

48. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 47 above as if alleged in full herein.

49. Plaintiff alleges that, when she notified Defendant that she was pregnant and requested accommodations, she was engaging in protected activity.

50. Plaintiff alleges that, immediately after she did so, Defendant began to take steps to terminate her employment and, then, after Plaintiff explained that she did not resign and did not intend to resign, that it decided to terminate her employment and/or reaffirmed its decision to terminate her employment.

51. Plaintiff alleges there is a causal connection between her protected activity and the termination. Petitioner alleges such a causal connection based on

several grounds, including temporal proximity, and the fact that, when she made several suggestions as to how her pregnancy could be accommodated, Defendant refused to respond to or rejected all of them and the fact that, when she explained that she did not resigned and had not intended to resign, Defendant refused to change its position and reaffirmed its decision to terminate her employment.

52. Plaintiff's allegations satisfy the third element of a prima facie case of retaliation.

53. Plaintiff's allegations state a claim of retaliation.

## IV. DAMAGES

54. Ms. Colata alleges Defendant's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, financial stress and emotional distress.

## V. RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1. Declaring that Defendant discriminated against Ms. Colata on the basis of her sex and pregnancy and retaliated against her, in violation of the Title VII of the Civil Rights Act;

2. Awarding Ms. Colata "make whole" relief, including awarding Ms. Colata the lost wage and lost benefit differential from the time Defendant terminated Ms. Colata's employment until Ms. Colata secured or secures comparable employment;

3. Awarding Ms. Colata her reasonable attorney's fees and costs;

4. Awarding Ms. Colata such other relief as may be just and equitable.

DATED this 9th day of November, 2023.

      */s/ David J. Holdsworth*
David J. Holdsworth
*Attorney for Plaintiff*

## VERIFICATION

Tatiana E. Colata, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she helped prepare and has read the foregoing COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of her knowledge and recollection.

                                     _/s/ Tatiana E. Colata_
                                     Tatiana E. Colata

SUBSCRIBED AND SWORN to before me, a Notary Public, this ____ day of _____, 20___.

                                     _____
                                     NOTARY PUBLIC

MY COMMISSION EXPIRES:     RESIDING AT: _____